**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ADAM KEUNE, ET AL. )<br>)<br>)<br>Plaintiffs, )<br>vs. )<br>)<br>MERCK & CO., INC., ET AL.[1] )<br>)<br>)<br>Defendants. ) | Case No. 4:12-cv-547-HEA<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS MERCK & CO., INC. AND MERCK SHARP & DOHME CORP.'S
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Plaintiffs do not dispute in their remand motion that 51 of the plaintiffs in this action are completely diverse from the named defendants. Nonetheless, plaintiffs ask the Court to send this case back to state court because complete diversity is lacking when plaintiffs' misjoined claims are looked at in the aggregate. The Court should refuse to do so.

As a threshold matter, the Court should defer consideration of plaintiffs' remand motion pending a ruling by the Judicial Panel on Multidistrict Litigation (the "Panel" or "MDL Panel") on Merck's motion to establish a multidistrict litigation ("MDL") proceeding, coordinating all federal cases in which plaintiffs make similar allegations with respect to PROPECIA® ("Propecia") or PROSCAR® ("Proscar"). Should the Court choose to consider plaintiffs' motion, however, it should be denied because plaintiffs' claims are fraudulently misjoined. As is discussed herein, on April 3, 2012, in *Patrick Welsh, et al. v. Merck Sharp, & Dohme Corp, et al.*, No. 11-3045 (D.N.J.), the Honorable Joel A. Pisano in the District of New Jersey found

---

[1] The caption of Plaintiffs' Petition incorrectly names Defendant Merck Sharp & Dohme Corp. as "Merck Harpe & The Dohme Cororation."

fraudulent misjoinder of the claims of 91 plaintiffs in a virtually identical pharmaceutical action. This case is no different. The same rationale applies and the same result should follow here.

## BACKGROUND

This action was filed on January 27, 2012 by 54 plaintiffs from 23 states and the District of Columbia, who allege that they suffered "adverse side effects, including but not limited to, sexual dysfunction and cognitive impairment" or "loss of her spouse's companionship, services, society." (Pet. ¶ 77; 116). Merck removed the case to this Court on March 23, 2012. (*See* Notice of Removal, ECF No. 1). Merck also moved to sever the plaintiffs' claims on March 23, 2012, on the ground that they are improperly joined under Federal Rule of Civil Procedure 20. (*See* ECF No. 6).

In *Christopher M. Masefield v. Merck & Co., Inc., et al.*, the plaintiff moved the Panel for creation of an MDL proceeding to coordinate the litigation relating to use of Propecia. Merck filed a Notice of Related Case with the MDL Panel regarding this action to treat it as a related case for purposes of the pending motion for transfer and consideration. *See* Exhibit 1 attached hereto. The MDL Motion is currently pending before the MDL Panel. That motion has been fully briefed, and a hearing was held on March 29, 2012. The hearing addressed venue of the MDL only, as there was no opposition to the establishment of an MDL for pretrial purposes for this litigation. On March 23, 2012, Merck moved for a stay of all proceedings in this case pending MDL transfer. (*See* ECF No. 8).

**Plaintiffs' Allegations**

According to Plaintiffs, Merck concealed "the true character, quality, and nature" of Propecia and Proscar. (Pet. ¶ 79). Plaintiffs further allege that Propecia and Proscar were defectively designed. (*See, e.g., id.* ¶¶ 66, 83). Plaintiffs claim to have suffered "sexual dysfunction and cognitive impairment." (*Id.* ¶¶ 76-77). Plaintiffs further claim that they have

2

suffered "significant pain and suffering" and "severe emotional distress" and [that] their quality of life has been severely diminished" as a result of using Propecia or Proscar. (*Id*. ¶ 77, 113).

## ARGUMENT

The Court should defer ruling on plaintiffs' motion for remand pending MDL transfer. As numerous courts have recognized, such an approach will best serve the interests of judicial economy and reduce the risk of inconsistent rulings by allowing the MDL court to address overlapping jurisdictional issues in a consistent, efficient manner. If the Court does consider the merits of plaintiffs' motion, however, it should be denied because plaintiffs' claims are fraudulently misjoined.

### I.   THE COURT SHOULD DEFER CONSIDERATION OF PLAINTIFFS' MOTION TO REMAND PENDING MDL TRANSFER.

The Court should refrain from ruling on plaintiffs' motion to remand because it is almost certain that this case will soon be part of an MDL proceeding. As set forth above, the plaintiff in the *Masefield* case moved the MDL Panel for creation of an MDL proceeding to coordinate litigation related to the use of Propecia.[2] The only issue in dispute relative to creation of an MDL proceeding is the issue of venue. The MDL Panel held a hearing in this matter concerning venue on March 29, 2012.

As set forth in more detail in Merck's Memorandum in Support of its Motion to Stay (ECF No. 9), the explicit purpose of an MDL is to coordinate the pretrial management of actions sharing common issues in a "just and efficient" manner. 28 U.S.C. § 1407(a). Allowing an action that overlaps with others that are already part of a potential MDL proceeding to go

---

[2] In the present action, Plaintiffs have alleged injuries and damages resulting from the use of either Propecia or Proscar, both of which are manufactured by Merck. The active ingredient in both Propecia and Proscar is finasteride. Propecia contains 1 mg of finasteride and Proscar contains 5 mg of finasteride.

3

forward while the MDL Panel makes a determination on transfer would undermine that purpose. *See, e.g., Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (absent a stay, "this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge").

By contrast, granting a stay of this action pending its likely transfer to an MDL proceeding will conserve the Court's resources and prevent duplicative discovery and pretrial management efforts. Very recently, the Western District of Missouri stayed all proceedings in a medical device product liability action – including ruling on a motion to remand – pending a transfer decision by the JPML. *Alicia Malcolm v. Todd A. Richards, M.D., et al.*, Civil Action No. 3:12-cv-5017 (W.D. Mo. March 23, 2012) (a copy of that order is attached as Exhibit 2). In the *Malcolm* case, like the present one, defendants argued that the plaintiff's motion to remand did not affect the district court's ability to stay and that jurisdictional issues could, and should, be decided by the MDL Judge. *See* Defendants' suggestions in Support of Motion to Stay in *Malcolm* (attached as Exhibit 3). For the same reasons that the *Malcolm* court stayed proceedings, this Court should also stay any further proceedings, including Plaintiffs' Motion to Remand, pending a ruling by the JPML. *See also Rivers*, 980 F. Supp. at 1360-61 ("any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation"); *Bledsoe v. Janssen Pharmaceutica*, No. 4:05-CV-02330ERW, 2006 WL 335450, at *1 (E.D. Mo. Feb. 13, 2006) ("[J]udicial economy weighs heavily in favor of granting the requested stay…[which] will…conserve judicial resources because only one court will need to make [pretrial] rulings"); *Euell v. Merck & Co., Inc.*, No. 4:05-CV-01497, 2005 WL 2348487, at *1 (E.D. Mo. Sept. 26, 2005) ("The Court finds Defendant Merck's judicial economy argument persuasive and concludes that…Merck's

Motion will be granted"); *C.M. v. Janssen Pharmaceutica, L.P.*, No. 4:05-CV-2183CAS, 2006 U.S. Dist. LEXIS 30522, at *1 (E.D. Mo. Feb. 6, 2006) (granting a stay in order "to conserve judicial resources and prevent inconsistent pretrial orders pending transfer"); *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, No. CIV.A.3:02-CV-0853-P, 2002 WL 31114069, at *2 (N.D. Tex. Sept. 23, 2002) ("If the MDL motion is granted, all of the Court's time, energy, and acquired knowledge regarding the action and its pretrial procedures will be wasted").

In addition, granting a stay will avoid the risk of inconsistent rulings on early motions. *Am. Seafood, Inc. v. Magnolia Processing, Inc.*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) (citing *Arthur-Magna, Inc. v. Del-Val Fin. Corp.*, CIV.A. No. 90-4378, 1991 WL 13725 (D.N.J. Feb. 1, 1991)) (granting a stay because district court's determination of pretrial motions "may conflict with the decisions of the Northern District of Mississippi which has in front of it similar motions. The result is that the defendants may be forced to prosecute or defend similar motions twice and the decisions of this Court and the Northern District may be in conflict."); *Krejce v. Merck & Co.*, No. 4:08-CV-295 CAS, 2008 WL 824269, at *1 (E.D. Mo. Mar. 25, 2008) (granting a stay "to conserve judicial resources and to prevent duplicative litigation and inconsistent pretrial orders pending transfer"); *Allen v. Wyeth*, No. 08-4827, 2008 U.S. Dist. LEXIS 102135, at *3 (D. Minn. Dec. 17, 2008) (granting a stay because if the action is transferred to an MDL court, that court would "be in the best position to rule" on plaintiffs' pre-trial motions "in a way that promotes consistency between the parties in the MDL"). Indeed, the need to avoid the risk of inconsistent rulings is one of the reasons why Congress established the MDL procedure. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Centralization under [28 U.S.C. § 1407] is necessary

in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

As noted above, plaintiffs' claims and legal theories overlap with several other lawsuits that are subject to a likely MDL proceeding. It makes no sense for this Court to duplicate the efforts of the eventual MDL court in those cases, and doing so would undermine the very purpose of an MDL proceeding. Accordingly, there can be no question that the interests of judicial economy and consistency of rulings strongly favor a stay here.

II.     **THE COURT HAS DIVERSITY JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE THEY ARE FRAUDULENTLY MISJOINED.**

Should the Court choose to reach the merits of plaintiffs' motion, it should be denied. As set forth above, the Court unquestionably has jurisdiction over the claims of 51 of the 54 plaintiffs in this action because they are diverse from all the defendants. Thus, the question before the Court is whether it should decline to exercise jurisdiction over the diverse claims of at least 51 plaintiffs simply because they have been fraudulently misjoined with the claims of three plaintiffs from New Jersey who chose to file their claims over 900 miles from where they live. The proper and fair answer is no. Because the plaintiffs in this case have nothing in common other than the fact that they all claim to have suffered some type of injury from using Propecia or Proscar, their claims are egregiously misjoined – and their motion for remand should be denied.

This precise issue was recently addressed in *Patrick Welsh, et al. v. Merck Sharp, & Dohme Corp, et al.*, No. 11-3045 (D.N.J. April 3, 2012). *See* Exhibit 4, attached hereto. In *Welsh*, 91 plaintiffs, from 28 states, brought suit in the City of St. Louis against Merck and 11 generic manufacturers concerning the pharmaceutical product Fosamax and its generic equivalent Alendronate Sodium. (Exh 4., p. 2). The case was removed to the Eastern District of

6

Missouri on the basis that plaintiffs' claims were fraudulently misjoined. The case was transferred to the Fosamax and Alendronate Sodium MDL in the District of New Jersey.

On April 3, 2012, the MDL Court issued its Order finding that plaintiffs' claims are fraudulently misjoined. First, the Court found that plaintiffs' claims did not satisfy the same transaction or series of transaction requirements for permissive joinder. *Id.* at p. 7. The Court held that it was "impossible to determine how the Plaintiffs share any connection. Furthermore, given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require divergent questions of law and fact. Thus, the Court found "that Plaintiffs' claims are misjoined." *Id.* at p. 8.

Second, the Court further found that the misjoinder was egregious and the plaintiffs had "an element of collusion intended to deprive Defendants of removal jurisdiction in federal court." *Id.* at p. 9. "Moreover, the factual, temporal, and geographic diversity among Plaintiffs' claims wholly disregards the purposes of permissive joinder because these are claims that 'no 'reasonable person would normally expect to be tried together.'" *Id.* Accordingly, the Court severed the plaintiffs, dropped the diverse plaintiffs, and remanded the non-diverse plaintiffs. *Id.* at p. 10. This case is no different and thus, the same result should follow here.

    **A.**    **Fraudulent Misjoinder Is A Recognized Exception To The Complete Diversity Rule.**

Under the fraudulent misjoinder doctrine, federal diversity jurisdiction exists "where diversity is destroyed only through misjoinder of parties." *Asher v. 3M*, No. 04-CV-522-KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005). The fraudulent misjoinder doctrine applies where plaintiffs' claims are "egregious[ly]" misjoined to defeat federal jurisdiction and "have no real connection" to one another. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir.

7

2000). In addition to the recent decision in *Welsh*, other federal courts throughout the country have recognized the validity of the fraudulent misjoinder doctrine. *See, e.g., In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court.") (internal citations omitted); *Grennell v. W.S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004) (holding that diversity jurisdiction cannot be defeated "through…joining nondiverse plaintiffs").[3]

Here, as in *Welsh*, plaintiffs have fraudulently misjoined the claims of 54 plaintiffs who have nothing in common other than the fact that they all claim to have used Propecia or Proscar and to have suffered **some** alleged injury as a result. Plaintiffs do not claim to have suffered the same alleged injuries. Instead, 47 plaintiffs vaguely allege that they suffered from "adverse side effects, including but not limited to, sexual dysfunction and cognitive impairment." (Pet. ¶ 77). The remaining 7 plaintiffs allege, equally vaguely, that they "have been caused, presently and in the future, to suffer the loss of her [sic] spouse's companionship, services, society." (*Id*. ¶ 116). Nowhere does the Petition identify the specific injury or injuries from which a particular plaintiff suffered as a result of that use. This is precisely the type of circumstance in which courts have found fraudulent misjoinder. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136,

---

[3] Although there are a few district court opinions refusing to recognize the fraudulent misjoinder doctrine, *see, e.g., Ballard v. Wyeth*, No. 4:04CV1111 CDP, 2004 WL 5436353, at *2 (E.D. Mo. Nov. 8, 2004), those opinions constitute "[a] small minority," *Reuter v. Medtronics, Inc.*, No. 10-3019 (WJM), 2010 WL 4628439, at *4 n.1 (D.N.J. Nov. 5, 2010).

145-46 (S.D.N.Y. 2001) (prescription drug plaintiffs' claims fraudulently misjoined where they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" and where they alleged "different injuries"); *In re Diet Drugs*, No. Civ. A. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (pleading went "well beyond mere misjoinder" where plaintiffs "attempt[ed] to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs"). Accordingly, even if this Court determines that a small percentage of the Plaintiffs are not diverse from Merck, just like the Court ordered in *Welsh*, it should sever those plaintiffs' cases and remand them to state court while exercising jurisdiction over the overwhelming majority of plaintiffs who *are* diverse from Merck.

**B.     *In re Prempro* Does Not Require Remand Of This Case.**

Plaintiffs also contend that the U.S. Court of Appeals for the Eighth Circuit has rejected the fraudulent-misjoinder doctrine in prescription-drug cases such as this one. (*See* Pls.' Memo. in Support of Mot. at 3 (citing *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 474 (2010)). Not so. The *Prempro* court explicitly abstained from passing judgment on the doctrine of fraudulent misjoiner. *Id* at 622. As the Court found in *Welsh, Prempro* turned on different facts – and is thus inapposite. (Exh. 4, p. 10).

In *Prempro*, the court reversed several orders denying motions for remand in cases in which multiple users of prescription hormone replacement therapy ("HRT") drugs alleged that they developed breast cancer as a result of using HRT medication. 591 F.3d at 617. In so doing, however, the Eighth Circuit explicitly noted that it was not rejecting the fraudulent-misjoinder doctrine as a matter of law. *Id*. at 622. Instead, the court simply held that, even under the doctrine, "plaintiffs' alleged misjoinder in th[at] case [wa]s not so egregious as to constitute

9

fraudulent misjoinder." *Id*. According to the Eighth Circuit, this was so because all of the plaintiffs claimed to have developed breast cancer as a result of using HRT medication – and their claims would therefore turn on common evidence regarding the alleged link between HRT and that specific disease. *Id*. at 623. Further, the court held that the defendants in *Prempro* "presented no evidence that the plaintiffs joined their claims to avoid diversity jurisdiction." *Id*. As the court explained, "the majority of courts demand more than simply the presence of nondiverse, misjoined parties, but rather a showing that the misjoinder reflects an egregious or bad faith intent on the part of the plaintiffs to thwart removal." *Id*. (internal quotation marks and citation omitted). Thus, "[w]ithout any evidence that the plaintiffs acted with bad faith," the court "decline[d] to conclude they egregiously misjoined their claims." *Id*.

This case is different from *Prempro* in a number of important ways. As an initial matter, unlike the plaintiffs in *Prempro*, Plaintiffs do not allege that Propecia or Proscar – the Petition does not specify which Plaintiff used which product – caused them all the same injury. Instead, the 54 plaintiffs claim to have experienced unspecified problems as a result of using Propecia or Proscar. There also exists the real likelihood that some plaintiffs took a generic form of Proscar, which was not manufactured by Merck. Plaintiffs also fail to identify the dosage of the drug taken by each of the plaintiffs. Varying doses is significant and may impact issues in this case.

Accordingly, as the *Welsh* Court found, this case is not *Prempro.* There is evidence that Plaintiffs structured their complaint in order to defeat diversity jurisdiction." (Exh. 4, p. 10). Plaintiffs "allegations are exceptionally vague" and their "joinder was undertaken to thwart Defendants' statutory right of removal to federal court, and therefore, Plaintiffs' claims are fraudulently misjoined. *Id.*

Plaintiffs argue that their claims are similar because "the Petition only includes one allegation concerning injury and it is the same for each plaintiff." Plaintiffs' Memo. in Support of Mot. to Remand at 4. The fact that only one allegation of injury applies to all 54 plaintiffs is suspect. That is particularly so where the allegation of injury is broadly and vaguely described as "sexual dysfunction and cognitive functioning." *Id*. Sexual dysfunction may include a wide variety of conditions that may have other causes, like hypertension, age or trauma, which will be specific as to each plaintiff. Cognitive functioning injury is so general as to include a vast array of potential issues and is not defined by plaintiffs in any fashion. This is hardly like *Prempro* where the injury was specific as to each plaintiff, i.e., breast cancer. Thus, in contrast to *Prempro*, there is no one common injury that unites all the plaintiffs' cases, arguably justifying joinder.

Further evidence of bad faith can be found in the fact that plaintiffs have joined the personal-injury claims of individuals from across the country, while consciously deciding to remain shy of the 100-claimant threshold that would trigger federal jurisdiction under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(11). The purpose of this maneuver was to avoid federal jurisdiction in as many plaintiffs' cases as possible. *See In re Diet Drugs*, 220 F. Supp. 2d 414, 422 (E.D. Pa 2002) (courts should use common sense when analyzing a plaintiff's intent in bringing a cause of action for purposes of fraudulent joinder).

Plaintiffs' reliance on a handful of remand orders in cases involving the prescription drug Avandia is similarly misplaced. (*See* Pls.' Memo. in Support of Mot. at 5 (citing Mem. & Order, *Dickerson v. GlaxoSmithKline, LLC*, No. 4:10CV00971 AGF (E.D. Mo. July 12, 2010) and others) (attached to Pls.' Memo. in Support of Mot. as Exs. C-E)). As an initial matter, each of the Avandia cases cited by plaintiffs involved only ***two*** plaintiffs' claims – a far cry from

plaintiffs' attempt to join the factually disparate claims of 54 different plaintiffs from various states together in one action. Further, the plaintiffs in each of those cases claimed to have suffered similar cardiovascular injuries as a result of their use of Avandia. *Id*. Thus, the allegations in the Avandia cases were markedly different from those presented here – where plaintiffs' claims may be based upon different dosages of medication and upon potentially generic medications made by a non-party manufacturer and where plaintiffs claim to have suffered vague, non-descript injuries as a result of using those drugs.

In short, plaintiffs have fraudulently misjoined the varying claims of 54 plaintiffs who may have used drugs manufactured by different entities and allegedly suffered a variety of injuries at different times under different circumstances. Accordingly, their motion for remand should be denied.

                                Respectfully submitted,

                                BRYAN CAVE LLP

                         By: /s/ Stephen G. Strauss
                              Dan H. Ball, #27227MO
                              dhball@bryancave.com
                              Stephen G. Strauss, #45018MO
                              sjstrauss@bryancave.com
                              Stefan A. Mallen, #51868MO
                              samallen@bryancave.com
                              211 N. Broadway, Suite 3600
                              St. Louis, MO 63102
                              (314) 259-2000 (telephone)
                              (314) 259-2020 (facsimile)

                              *Attorneys for Merck Sharp*
                              *& Dohme Corp.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2012, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

  /s/ Stephen G. Strauss